# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

DANIEL CORREA CABRAL,

      Plaintiff,

v.                                                                    Case No:   6:26-cv-425-GAP-LHP

LOUIS A. QUINONES, JR., GARRETT
RIPA, SECRETARY KRISTI NOEM,
U.S. DEPARTMENT OF HOMELAND
SECURITY, U.S. ATTORNEY
GENERAL PAMELA BONDI, and
EXECUTIVE OFFICE FOR
IMMIGRATION REVIEW,

      Defendant.

## ORDER

This matter is before the Court on the Petition for Writ of Habeas Corpus filed by Petitioner Daniel Correa Cabral ("Petitioner" or "Cabral"). Doc. 1. The Court has considered Respondents' Response in Opposition and Petitioner's Reply. Doc. 11; Doc. 14. A hearing on this matter was held on March 3, 2026. Doc. 16. For the reasons set forth below, the Habeas Petition will be granted.

### I. Background

Petitioner is a citizen of Brazil. Doc. 1, ¶ 23. He is an immigrant without lawful status who was at the Orange County Jail in the custody of Immigration and

Customs Enforcement ("ICE"). *Id.*, ¶¶ 2-9. He entered the United States on August 1, 2015 on a B2 visitor visa and obtained an F1 student visa that was valid until November 30, 2022. Doc. 11 at 1-2; Doc. 11-3 at 3. He was arrested on February 15, 2026 for driving without a valid driver's license, and after posting bond, was momentarily released and detained again, on the same day, pursuant to an immigration hold.[1] Doc. 1, ¶¶ 3-9; Doc. 11 at 2.

On February 23, 2026, Petitioner filed a petition for writ of habeas corpus ("Petition") challenging the legality of his detention. *See generally* Doc. 1. In his Petition, he maintains that he has not appeared before an immigration judge or been issued a Notice to Appear to commence removal proceedings. *Id.*, ¶ 8. In addition to contending that his continued detention without a hearing violates the Fourth Amendment and due process, he asserts that recent, unprecedented policy changes by the Government have caused the Executive Office for Immigration Review ("EOIR") to abandon its role as an impartial adjudicator and would result in his indefinite detention. *Id.*, ¶¶ 32-70.

---

[1] Under the Florida Statutes, Petitioner was charged with driving while his license was permanently revoked. *See* Fla. Stat. § 322.341; *see also* Doc. 1, ¶ 3. Prior to this arrest, he had one suspension against his driving privilege for failing to appear on a traffic summons. *See State of Fla. v. Daniel Correa Cabral*, No. 48-2026-CT-401217-A-O (Orange Cty. Ct. Feb. 16, 2026). This offense do not qualify him for mandatory detention. *See* 8 U.S.C. § 1226(c).

In light of this Court's recent experience with similar habeas petitions, on February 24, 2026, this Court entered an Order that temporarily restrained and enjoined Respondents and those in privity with them from moving Petitioner out of the Orange County Jail until further order of the Court. Doc. 4. After learning that Petitioner had been released from the Orange County Jail to ICE custody, this Court amended its Order to prohibit transfer of Petitioner from the Middle District of Florida. Doc. 5. That Order also directed Respondents to show cause as to why the Court should not grant the Petition. *Id.*

On February 27, 2026, Respondents filed their Response to Petitioner's Habeas Petition. Doc. 11. In it, they expressly acknowledged that Petitioner was being detained "under the discretionary provisions of 8 U.S.C. § 1226" and is therefore eligible for a bond hearing. *Id.* at 3-5. However, Respondents failed to address Petitioner's arguments regarding the political capture of the EOIR. Instead, they cite to *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006), which sets forth the guidance for immigration judges when considering release on bond. *Id.* at 5-6.

On March 2, 2026, Petitioner filed a Reply (Doc. 14), and on March 3, 2026, this Court held a hearing to consider the Petition (Doc. 16).[2] At the hearing,

---

[2] At the outset of the hearing, Respondents produced two documents to the Court—an arrest warrant and the initial Notice to Appear for Petitioner. *See* Doc. 17; *see also* Doc. 11 at 2, n.1-2. Neither document appears to be legitimate.

Respondents claimed that Petitioner would receive a legitimate bond hearing, despite the existence of a BIA decision that prohibits immigration judges from considering bond requests from any noncitizen.

## II.     Habeas Standard

Congress granted federal courts the authority to determine whether a prisoner "is in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3). To answer that question in the present immigration context, "the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal." *Zadvydas v. Davis*, 533 U.S. 678, 699 (2001). "[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699-700. But even where removable is reasonably foreseeable, "the habeas court should consider the risk of the alien's committing further crimes as a factor **potentially justifying confinement within that reasonable removal period**." *Id.* at 700 (emphasis added).

## III.    Analysis

### A.     Petitioner's Bond Hearing

There is no dispute that 8 U.S.C. § 1226 applies here and that Petitioner is entitled to a legitimate bond hearing. *See, e.g.*, Doc. 1, ¶ 51; Doc. 11 at 3-5. Indeed, Respondents represent that they would provide one should it be requested or ordered by this Court. *See, e.g.*, Doc. 11 at 5. However, what Respondents do not

concede, or even mention, is that the Government has manipulated the process to ensure that Petitioner has no reasonable possibility of obtaining his release on bond. *See, e.g., id.* at 5-6.

The Government's manipulation began in July 2025, when Customs and Border Protection ("CBP") issued a memorandum titled "Detention of Applicants for Admission" ("CBP Memo").[3] This memorandum communicated the decision by the Department of Homeland Security ("DHS"), in conjunction with Department of Justice ("DOJ"), to "revisit[] its legal position on detention and release authorities," concluding that 8 U.S.C. § 1225, rather than § 1226, is "the applicable immigration detention authority for all applications for admission." *See* CBP Memo at 1. It further reported that all applicants for admission are subject to mandatory detention under § 1225 and may not be released from DHS custody except if paroled. *See id.*

Two months later, the BIA, contrary to decades of prior precedent, followed suit with the issuance of *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025). There, the BIA held that immigration judges "lack authority to hear bond requests or to grant bond to aliens . . . who are present in the United States without admission"

---

[3] *See* UNITED STATES CUSTOMS AND BORDER PROTECTION, https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf (last visited March 3, 2026).

because all "aliens who are present in the United States without admission are applicants for admission as defined under . . . § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings." *Id*. at 220, 225.

The EOIR further crystalized the application of this policy on January 13, 2026, when Chief Immigration Judge Teresa Riley—in response to the Honorable Sunshine S. Sykes's effort to neutralize *Hurtado* (*see Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025)—emailed all immigration judges, maintaining that "*Yajure Hurtado* remains binding precedent on agency adjudications" ("Chief Immigration Judge's Email").[4]

Proceedings in this Court provide clear evidence that, notwithstanding the hollow assurances made by Respondents' counsel, immigration judges will likely follow *Hurtado* and decline to provide a merit-based bond hearing. The Court need look no further than its most recent experience in *Nahadian Fard v. Bondi et al.*, No. 6:26-cv-157-GAP-RMN, Doc. 23 (M.D. Fla. Feb. 12, 2026). There, despite the Government's concessions that petitioner was detained under § 1226(a) and therefore entitled to a bond hearing, the immigration judge in that case took "no

---

[4] *See* American Immigration Lawyers Association, *Practice Alert: District Court Vacates Yajure Hurtado* (Feb. 19, 2026), https://www.aila.org/library/practice-alert-district-court-vacates-Yajure-Hurtado (providing a copy of the Chief Immigration Judge's Email); *see also* Megan Crepeau, *Immigration Judge Says Detainee Bond Hearings Not Required (1)*, BLOOMBERG LAW (Jan. 15, 2026), https://www.bloomberglaw.com/bloomberglawnews/litigation/X7BPKHE8000000?bna_news_filter=litigation#jcite.

action" because he determined that he had no discretion to issue a bond. *See id.*, Doc. 18 at 3-4, 22 (providing a copy of the immigration judge's order). Thus, although Respondents imply that Petitioner's bond hearing would proceed under the guidance of *Matter of Guerra*—a decision that precedes *Hurtado*—it is doubtful that an immigration judge would reach, let alone apply, the *Guerra* factors to determine bond, as doing so assumes that he or she would be willing to defy *Hurtado*'s binding precedent.

Respondents' assurances that they would facilitate a legitimate bond hearing, should this Court order one, are equally divorced from reality. To buttress their assurances, Respondents cited a single case, before the Honorable Julie S. Sneed, where a petitioner was granted a merit-based bond hearing, but only after the Government was ordered to ensure that an immigration judge conduct one. *See Hernandez v. Quinones et al.*, No. 6:26-cv-166-JSS-LHP, Doc. 15 (M.D. Fla. Feb. 6, 2026). Respondents contend, that because the immigration judge in that case ordered that petitioner be released from custody under a bond of $5,000 (*see id.*, Doc. 25), a legitimate hearing would also be held for Cabral.

However, Respondents' reference to this case is not compelling. The willingness of a single immigration judge to defy *Hurtado* in one of the many cases before this Court does not diminish the fact that *Hurtado* remains binding on agency proceedings. *See* Chief Immigration Judge's Email. The Government has not

announced any change in policy. And the history of these proceedings has confirmed the Government's intent to maintain a policy of mandatory, indefinite detention for all noncitizens. *See, e.g., Nahadian Fard*, 6:26-cv-157-GAP-RMN, Doc. 23.

Consequently, the response of one immigration judge to Judge Sneed's order provides no assurance that another immigration judge will also defy binding agency precedent and conduct a legitimate bond hearing for Cabral; or any of the other noncitizens who have been detained by ICE without a bond hearing in Orlando.[5]

As it now stands, an immigrant detained by ICE can only get a bond hearing if he or she hires an attorney, who files a petition for habeas corpus, obtains an order from a district judge, and is lucky enough to be before an immigration judge that actually obeys it.[6] Accordingly, because indefinite custody without the opportunity

---

[5] Credible reports reflect that in the past few months, more than 300 people have been detained by ICE in Orlando. *See, e.g.,* Ryan Gillespie, Cristobal Reyes & Natalia Jaramillo, *As rumors swirl about ICE surge in Orlando, jail numbers show it already might be happening*, ORLANDO SENTINEL (Jan. 16, 2026), https://www.orlandosentinel.com/2026/01/16/as-rumors-swirl-advocates-on-edge-about-potential-ice-surge-in-orlando/. Except for the petition in Judge Sneed's case, the Court is not aware of *any* others who have received a bond hearing. And Respondents have made no representations as to any such cases.

[6] It is doubtful that ICE even notifies the detained immigrant of his or her right to a bond hearing because the detention record in this case expressly disclaims any such right. *See* Doc. 11-3 at 4 (showing that Cabral's records categorize him as "subject to mandatory detention" under § 1225).

for a legitimate bond hearing is contrary to law, this Court concludes that Petitioner has been unlawfully detained and is therefore entitled to habeas relief. *See Nahadian Fard*, 6:26-cv-157-GAP-RMN, Doc. 23 at 3-5.

### B.   Counsel's Candor to the Court

As a final matter, it is worth noting that counsel's persistent misrepresentations regarding the status of bond hearings in these immigration-related habeas cases have not gone unnoticed by this Court. Counsel's failure to acknowledge *Hurtado* or its controlling effect in this case (*see* Doc. 11 at 5-6) is only the latest example of the United States Attorney Office's disregard for its duty of candor to this Court. *See Nahadian Fard*, 6:26-cv-157-GAP-RMN, Doc. 23.

### IV.   Conclusion

Accordingly, it is **ORDERED** that:

1. Petitioner Daniel Correa Cabral's Petition for a writ of habeas corpus and injunctive relief is hereby **GRANTED**.

2. Respondents shall **IMMEDIATELY RELEASE** the Petitioner from custody.

3. Respondents shall **IMMEDIATELY** return all of Petitioner's documentation and any other personal property.

4. Respondents and all other persons or entities acting in active concert or participation with them are **RESTRAINED AND ENJOINED** from re-

arresting or detaining Petitioner **UNTIL FURTHER ORDER OF THE COURT**. The Court will consider lifting this prohibition once the BIA vacates *Hurtado* and the Court is convinced that a fair and impartial bond hearing can be timely provided.

5. No security bond is required.

6. Petitioner is **DIRECTED** to notify his counsel should his place of residence change while his immigration proceedings are ongoing.

7. Petitioner's Motion to Enforce the Court's Amended Order (Doc. 8) is hereby **DENIED as moot**.

8. **The Clerk is DIRECTED** to enter judgment in favor of Petitioner and against Respondents.

9. The Court retains jurisdiction to enforce this order and to consider the matter of fees and costs.

**DONE** and **ORDERED** in Orlando, Florida on March 4, 2026.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party